SAMUEL OLIVER et al., plaintiffs in error, vs. AMOS A. WIL-LIAMS, defendant in error.

Where the defendant in ejectment takes another person on the land in dispute, rents him the premises, and after nailing up the cabin, the only building on the place, they retire together, charging the witness not to disclose the transaction ; is the possession changed? *Quere ?* Clearly it is not, if the whole affair be colorable only, and intended to avoid a suit at the instance of the plaintiff against the defendant as tenant in possession.

Ejectment and nonsuit, from Catoosa county. Decided by Judge TRIPPE, October Term, 1857.

An action of ejectment was brought by the plaintiff in error, to recover a lot of land from the defendant in error.

Upon the trial, the plaintiff, after the production of certain documentary evidence, introduced the following witnesses:

*Gray B. Lassiter,* who testified, that in March, 1853, he went with McCutchin, the attorney of Samuel Rawlins, to see Amos A. Williams; McCutchin told Williams that he had come about the lot of land in question, in this suit, and asked Williams whether he was in possession of the lot; that if he was, he McCutchin should sue him. Williams replied, "Mac, I have nothing to say, you can exercise your own discretion."

*Elijah Fitzgerald,* testified, that he knew the lot of land that Williams was in possession in 1846 or 1847, and had either himself or by his tenants, continued in possession ever since.

In February 1853, Williams and Lively sent for witness, when they all went on the land together, and Williams put Lively in possession of it, having rented it for the year for $25. Defendant Williams is now in possession of the land. Joel Barnes went into possession of the lot of land in March, but was put out and Lively took possession as Williams' tenant.

*Joel Barnes,* testified, that he entered on the land in March, 1853, as tenant of Samuel Rawlins. He was arrested and taken to town, and when he returned, his family and furniture had been turned out, and Williams was in possession of the lot.

*Michael Dickson,* testified, that the defendant Williams was on the land in 1839, and by himself or his tenants was in possession of and claimed the land as his own. Thomas Strickland as tenant of Williams, was in possession in 1852. Defendant Williams had cut and carried off from the lot considerable quantity of wood.

*Thomas Brock,* testified that soon after Barnes was turned out of possession in 1853, he was sent for as he was told by

Lively, and Lively and the defendant hired him to take possession of the lot. Williams claimed the land as his own. He (witness) was hired to take possession of it, to keep Rawlins from getting it.

Plaintiff then closed.

Counsel for the defendant then moved the Court for a nonsuit, on the ground that there was no evidence that the defendant was in possession of the land at the time of the commencement of the suit.

Plaintiff's counsel insisted that there was such evidence, and that the plaintiff had the right to have the question of possession submitted to the jury.

The Court refused to submit the case to the jury, and granted a nonsuit, and to this decision of the Court, the plaintiffs excepted.

AKIN, appeared for the plaintiff in error.

HOOPER & WALKER, contra.

By the Court.—LUMPKIN, J. delivering the opinion.

The only question in this case is, whether there was evidence offered by the plaintiff, as to the possession of the defendant at the time the action was brought, to take the case to the jury? The Court below held there was not; and granted a nonsuit, and that is the decision complained of.

There had been a previous suit between the same parties, respecting the same land, which was dismissed, October 1852. The present action was filed the 2d and served the 3d day of March, 1853; and the state of the facts existing at that time, was these: Williams, the person contesting the title of the plaintiff, had been claiming the land for years before the first case was commenced in 1844, and after that time. But acting probably under legal advice, he deemed it important not to be in the actual possession of the premises for the

next six months after the first case was dismissed, inasmuch as the plaintiff was compelled to renew his suit within that time, or forfeit his right to do so afterwards. Williams therefore takes one Absalom Lively to a cabin which was the only building on the place, rents him the land for the year 1853, for twenty-five dollars, the door is nailed up, and the parties retire together; the witness being charged not to divulge the transaction.

On the 4th of March, 1853, Barnes the tenant of the plaintiff, goes to the house, lifts the door off the hinges, takes possession of the empty hut, not even finding the few old clothes that had been put there by Lively. Barnes remained until his crop was nearly made, when he was turned out by the joint act of Williams and Lively.

Under these circumstances, did the premises ever change possession, even if the contract between Williams and Lively had been *bona fide?* But if the arrangement was colorable only, and the jury had a right to find from the proof that it was, and likely would have so thought; then it is quite clear to our minds that the possession of Williams never was changed. This question, at any rate, should have been submitted to the jury, with a suitable charge from the Court, as to the law of the case.

Judgment reversed